Rob Bonta
Attorney General of California
Timothy E. Sullivan, SBN 197054
Supervising Deputy Attorney General
Donald Robinson, SBN 72402
Somerset Perry, SBN 293316
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA  94612-0550
Telephone:  (510) 879-0852
Fax:  (510) 622-2270

*Attorneys for Plaintiffs*
*Department of Toxic Substances Control and the*
*Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>CHEVRON U.S.A., INC.; PACIFIC GAS AND ELECTRIC COMPANY; THE DOW CHEMICAL COMPANY; SHELL OIL COMPANY; EXXON MOBIL CORPORATION; NATIONAL SEMICONDUCTOR (MAINE) INC.; INTERNATIONAL BUSINESS MACHINES CORPORATION; AEROJET ROCKETDYNE, INC.; BAYER CROPSCIENCE, INC.; HP INC.; E.I. DUPONT DE NEMOURS AND COMPANY; UNITED STATES STEEL CORPORATION; UNION OIL COMPANY OF CALIFORNIA; UNION PACIFIC RAILROAD COMPANY; and FMC CORPORATION,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR RECOVERY OF RESPONSE COSTS and DECLARATORY RELIEF (42 U.S.C. §§ 9601 et seq.) |

1

COMPLAINT FOR RECOVERY OF RESPONSE COSTS (VINE HILL)

Plaintiffs, the California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively referred to herein as "Plaintiffs") allege as follows:

**STATEMENT OF THE CASE**

1. This is a civil action brought by Plaintiffs against Chevron USA, Inc.; Pacific Gas and Electric Company; The Dow Chemical Company; Shell Oil Company; Exxon Mobil Corporation; National Semiconductor (Maine) Inc.; International Business Machines Corporation; Aerojet Rocketdyne, Inc.; Bayer CropScience, Inc.; HP Inc.; E.I. DuPont De Nemours and Company; United States Steel Corporation; Union Oil Company of California; Union Pacific Railroad Company; and FMC Corporation (each individually referred to herein as a "Defendant" and collectively referred to herein as the "Defendants") under sections 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), for the recovery of unreimbursed response costs that Plaintiffs have incurred, and interest on such response costs, in connection with releases and threatened releases of hazardous substances at, beneath, above, and/or from the Vine Hill Complex landfill ("Vine Hill Complex"), a closed hazardous waste treatment and disposal landfill located in Contra Costa County, California.

2. Plaintiffs further make a claim for declaratory relief, under 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that each Defendant is jointly and severally liable to Plaintiffs for the response costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future as result of any release or threatened release of a "hazardous substance," as defined in CERCLA section 101(14), 42 U.S.C. § 9601(14), at the Vine Hill Complex.

3. The Vine Hill Complex was operated as a hazardous and solid waste landfill until in or about 1989. Both portions of the Vine Hill Complex (collectively referred to herein as the "Vine Hill Complex"), and the horizontal and vertical extent of contamination caused by the releases and threatened releases of hazardous substances from the Vine Hill Complex, is a "facility," within the meaning of sections 101(9)(A) and 101(9)(B), of CERCLA, 42 U.S.C. §§ 9601(9)(A), 9601(9)(B).

**JURISDICTION AND VENUE**

4. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases and threatened releases of hazardous substances that are at issue occurred in this judicial district.

**PLAINTIFFS**

6. DTSC is a public agency of the State of California, organized and existing under California Health and Safety Code sections 58009 and 58010. DTSC has the authority to protect California's people and environment from the harmful effects of toxic substances by restoring contaminated resources, enforcing hazardous waste laws, reducing hazardous waste generation, and encouraging the manufacture of chemically safer products. *See, e.g.*, Cal. Health & Safety Code §§ 25100-25259, §§ 25300-25359.45, and §§ 58009-58010. DTSC has authority under state law to determine whether there has been a release and/or threatened release of a hazardous substance and to respond to releases and/or threatened releases of a hazardous substance.

7. The Toxic Substances Control Account is an account within the State of California General Fund. California Health and Safety Code section 25173.6 establishes the account and the Director of DTSC administers the account. Under California Health and Safety Code section 25361(a), the account shall be a party in any action for the recovery of response costs or expenditures under Chapter 6.8 of Division 20 of the California Health and Safety Code that were incurred by DTSC from the account.

**DEFENDANTS**

8. Defendant CHEVRON U.S.A. INC. ("CHEVRON USA") is a corporation organized and existing under the laws of the State of Pennsylvania. DTSC is informed and believes that CHEVRON USA has its principal place of business in San Ramon, California. DTSC is further informed and believes, and based on such information and belief alleges, that CHEVRON USA "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

9. Defendant PACIFIC GAS & ELECTRIC COMPANY ("PGE") is a corporation organized and existing under the laws of the State of California. DTSC is informed and believes, and based on such information and belief alleges, that PGE has its principal place of business in San Francisco, California. PGE "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

10. Defendant THE DOW CHEMICAL CORPORATION ("DOW") is a corporation organized and existing under the laws of the State of Delaware. DTSC is informed and believes, and based on such information and belief alleges, that DOW has its principal place of business in Midland, Michigan. DTSC is further informed and believes, and based on such information and belief alleges, that DOW "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

11. Defendant SHELL OIL COMPANY ("SHELL") is a corporation organized and existing under the laws of the State of Delaware. DTSC is informed and believes, and based on such information and belief alleges, that SHELL has its principal place of business in Houston, Texas. DTSC is informed and believes, and based on such information and belief alleges, that SHELL (by and through a former division or subsidiary) "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

12. Defendant EXXON MOBIL CORPORATION ("EXXON") is a corporation organized and existing under the laws of the State of New Jersey. DTSC is informed and believes, and based on such information and belief alleges, that EXXON has its principal place of business in Irving, Texas. DTSC is further informed and believes, and based on such information and belief alleges, that EXXON "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

13. Defendant NATIONAL SEMICONDUCTOR (MAINE) INC., ("NAT'L SEMICONDUCTOR") is a corporation organized and existing under the laws of the State of California and is the successor-in-interest to Fairchild Camera and Instrument Corp. DTSC is informed and believes, and based on such information and belief alleges, that Fairchild Camera

and Instrument Corp. "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

14. Defendant INTERNATIONAL BUSINESS MACHINES CORPORATION ("IBM") is a corporation organized and existing under the laws of the State of New York.  DTSC is informed and believes, and based on such information and belief alleges, that Defendant has its principal place of business in White Plains, New York.  DTSC is further informed and believes, and based on such information and belief alleges, that IBM "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

15. Defendant AEROJET ROCKETDYNE, INC. ("AEROJET") is a corporation organized and existing under the laws of the State of Ohio.  DTSC is informed and believes, and based on such information and belief alleges, that AEROJET has its principal place of business in Sacramento, California.  DTSC is further informed and believes, and based on such information and belief alleges, that AEROJET, and/or the Aerojet Strategic Propulsion Company, one of Aerojet's divisions, "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

16. Defendant BAYER CROPSCIENCE, INC. ("BAYER") is a German multinational pharmaceutical and life sciences company corporation organized and existing under the laws of Germany.  DTSC is informed and believes, and based on such information and belief alleges, that BAYER is the successor to Stauffer Chemical Company, which DTSC is informed and believes, and based on such information and belief alleges, "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

17. Defendant HP INC. ("HP") is an American multinational information technology company headquartered in Palo Alto, California.  DTSC is informed and believes, and based on such information and belief alleges, that HP "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

18. Defendant E.I. DUPONT DE NEMOURS & COMPANY ("DUPONT") is a corporation organized and existing under the laws of the State of Delaware. DTSC is informed and believes, and based on such information and belief alleges, that DUPONT has its principal place of business in Wilmington, Delaware. DTSC is further informed and believes, and based on such information and belief alleges, that DUPONT "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

19. Defendant UNITED STATES STEEL CORPORATION ("U.S. STEEL") is an integrated steel producer with headquarters in Pittsburgh, Pennsylvania. DTSC is further informed and believes, and based on such information and belief alleges, that U.S. STEEL "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

20. Defendant UNION OIL COMPANY OF CALIFORNIA ("UNOCAL") is a corporation organized and existing under the laws of the State of California, with its corporate headquarters in El Segundo, California. DTSC is informed and believes, and based on such information and belief alleges, that UNOCAL "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

21. Defendant UNION PACIFIC RAILROAD, INC. ("UNION PACIFIC") is a corporation organized and existing under the laws of the State of Delaware. DTSC is informed and believes, and based on such information and belief alleges, that UNION PACIFIC has its principal place of business in Omaha, Nebraska. DTSC is informed and believes, and based on such information and belief alleges, that UNION PACIFIC is the successor-in-interest to Southern Pacific Transportation Company, which DTSC is informed and believes, and based on such information and belief alleges, that "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

COMPLAINT FOR RECOVERY OF RESPONSE COSTS (VINE HILL)

22. Defendant FMC CORPORATION ("FMC") is a corporation organized and existing under the laws of the State of Delaware. DTSC is informed and believes, and based on such information and belief alleges, that FMC has its principal place of business in Philadelphia, Pennsylvania. DTSC is further informed and believes, and based on such information and belief alleges, that FMC "arranged for disposal or treatment … of hazardous substances," as set forth in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), at the Vine Hill Complex.

23. DTSC is informed and believes, and based on such information and belief alleges, that each Defendant knowingly arranged for the disposal of its hazardous substances in California.

### THE VINE HILL COMPLEX

24. The Vine Hill Complex is a closed hazardous and solid waste landfill located at 896 Waterbird Way, Martinez, Contra Costa County, California. The Vine Hill Complex is composed of two properties, the Vine Hill property, and the Baker property. Pacheco Creek flows through the properties.

25. The Vine Hill portion of the Vine Hill Complex property occupies approximately 41 acres and is identified by Contra Costa County Assessor's Parcel numbers 380-020-016 (38.9 acres) and 380-020-002 (1.8 acres).

26. The Baker portion of the Vine Hill Complex property currently occupies approximately 30 acres and consists of one parcel, Contra Costa County Assessor's Parcel number 159-250-014 (30.343 acres). The Baker property is located across Pacheco Creek, between Pacheco Creek and Walnut Creek.

27. The Vine Hill Complex lies in a deltaic, anaerobic marshy environment consisting primarily of bay mud and marshy, peat environments. Pacheco Creek flows through the Vine Hill Complex and then into Suisun Bay. Land uses surrounding the Vine Hill Complex consist of various residential, commercial, industrial, and open space land uses.

28. Hazardous waste was managed and disposed of at the Vine Hill Complex from at least the 1940's to 1989. Beginning in the 1940's, the Vine Hill portion of the Vine Hill Complex property was used as a municipal refuse landfill. Prior to 1971, the Baker portion of the Vine Hill

Complex property was reclaimed marshland used by the U.S. Army Corps of Engineers as a dredge disposal area. An entity known as the IT Corporation began to operate the Vine Hill portion of the Vine Hill Complex as a hazardous waste facility in approximately 1959 and the Baker portion of the Vine Hill Complex property in approximately 1971.

29. IT Corporation operated the Vine Hill portion of the Vine Hill Complex property from approximately 1959 to 1989, and the Baker portion of the Vine Hill Complex property from approximately 1971 to 1989. Both properties ceased accepting waste from off-site sources in 1987. Wastes delivered to the Vine Hill Complex included, but were not limited to: municipal refuse (municipal rubbish, demolition debris and soil); petroleum industry byproducts; ferrous and nonferrous metals; electronic equipment and components; pharmaceuticals; resins; paints; pigments; byproducts of food processing facilities; and waste from metal finishing, photo finishing, and analytical laboratories. Impacts to environmental media (e.g., soil vapor, soil, surface water and groundwater) occurred during the management of the hazardous materials and/or wastes received at the Vine Hill Complex.

30. After the Vine Hill Complex ceased accepting waste from offsite sources, the IT Corporation undertook formal closure activities and, on June 23, 1999, the Vine Hill Complex received closure certification. The Vine Hill Complex transitioned to postclosure status pursuant to a postclosure permit approved by DTSC on June 11, 2003. *See* Cal. Health & Safety Code §§ 25245-25248. A subsequent postclosure permit renewal application did not qualify for renewal because of inadequate financial assurances.

31. The on-going, postclosure activities required at the Vine Hill Complex include, but are not limited to, routine inspections; maintenance and compliance activities; active control of groundwater and leachate through pumping, treatment, and monitoring; soil vapor controls; and long-term sampling, monitoring, and reporting.

32. On November 29, 2001, the title to the Vine Hill Complex property was transferred to an affiliated entity known as IT Vine Hill LLC, a California limited liability company.

33. In 2002, IT Corporation (the former owner and operator of the Vine Hill Complex) filed for bankruptcy protection and, on May 1, 2004, the "IT Environmental Liquidating Trust"

("ITELT") was established to oversee the long-term postclosure operation, maintenance, and upkeep of the Vine Hill Complex as part of the conclusion of the bankruptcy proceedings. Also on May 1, 2004, ITELT became the operator of the Vine Hill Complex.

34. A requirement applicable to the Vine Hill Complex is that the owner/operator–*i.e.*, ITELT–must obtain and maintain sufficient financial assurances that it can complete the required postclosure activities. *See* Cal. Health & Saf. Code § 25245(a)(2); Cal. Code Regs., tit. 22, § 66264.145(e)(3).

35. On February 29, 2016, DTSC determined that ITELT was in violation of the postclosure requirements, in that the amount determined necessary for the purpose of demonstrating adequate financial assurances for completion of the postclosure activities was underfunded by an amount no less than $2,071,254.33.

36. On April 5, 2016, ITELT informed DTSC in writing that it had "no additional financial assets, or mechanisms in place, to meet the financial assurance obligations" required by California law.

37. In written correspondence dated July 28, 2016, DTSC notified ITELT that the re-calculated shortfall in financial assurances for postclosure actions at the Vine Hill Complex is $10,214,232, based upon the 30-year financial assurance period, which amount is periodically reassessed and financial assurances renewed for another 30-year period to ensure long-term financial assurance for postclosure activities at Vine Hill. In this July 28, 2016 letter, DTSC determined – based on ITELT's April 5, 2016 letter – that ITELT would not be able to meet the financial assurance obligations for continued maintenance of the closed units, including the amount necessary for renewal of its permit to conduct the required postclosure activities.

38. On November 29, 2016, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order (ISE Order, Docket Number: HSA-FY16/17-051) under the authority of Health and Safety Code sections 25358.3(a), 25355.5(a)(1)(B), 58009 and 58010. DTSC issued this order, which was amended on February 17, 2017, May 26, 2017, and December 6, 2017, to address threatened releases of hazardous substances if the Vine Hill Complex is not properly managed when existing funds are depleted,

and a permanent remedy has not been implemented.  (The term "ISE Order" shall refer to the November 29, 2016 order, as amended.)  The ISE Order named ITELT and a few generators [*i.e.*, "arrangers"], including the Defendants, or affiliates of Defendants, as respondents required to perform the work described in the ISE Order.

39. There have been "releases" of hazardous substances from the Vine Hill Complex, as defined in section 101(22) of CERCLA, 42 U.S.C. § 9601(22), which resulted in serious impacts to the environment (*e.g.*, air, soil, soil vapor, surface water, groundwater, or other media) and allowed exposure (*e.g.*, inhalation, dermal absorption, and ingestion) to human and ecological receptors on and off the Vine Hill Complex.  Further releases of hazardous substances from the Vine Hill Complex threaten to result in similar impacts to the environment and exposure to human and ecological receptors.

## FIRST CLAIM FOR RELIEF

**(Cost Recovery Claim Against All Defendants Pursuant to Section 107(a) of CERCLA)**

40. Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 39 above, as though fully set forth herein.

41. Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), provides in relevant part that any person who arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at a facility from which there has been a release or a threatened release of a hazardous substance which causes the incurrence of response costs, shall be liable for all costs of removal or remedial action incurred by a State not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("National Contingency Plan"), 40 C.F.R. Part 300.

42. The Vine Hill Complex, and the horizontal and vertical extent of the hazardous substance contamination caused by releases of hazardous substances from the Vine Hill Complex, including, without limitation, any area where any hazardous substance from the Vine Hill Complex has come to be located, is a "facility" within the meaning of sections 101(9)(A) and 101(9)(B) of CERCLA, 42 U.S.C. §§ 9601(9)(A), 9601(9)(B).

43. Each Defendant is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

44. Each Defendant arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Vine Hill Complex. Hazardous substances from the Vine Hill Complex have been released into the environment and there is a continuing threat of additional hazardous substance releases from the Vine Hill Complex. These releases and threatened releases have resulted, and will continue to result, in Plaintiffs' incurrence of response costs. Each Defendant is liable to Plaintiffs for response costs Plaintiffs incurred as a result of releases and threatened releases at the Vine Hill Complex, pursuant to section 107(a)(3) of CERCLA, 42, U.S.C. § 9607(a)(3).

45. The hazardous and solid wastes treated and/or disposed of at the Vine Hill Complex contained, without limitation:  arsenic, chromium, lead, nickel, organic lead, zinc, acetone, benzene, 1,1-dichloroethane, cis-1,2 dichloroethene, carbon disulfide, chlorobenzene, chloroform, 1,4 dioxane, 1,1-dicloropropene, 1,2-dichlorobenzene, 1,4-dichlorobenzene, 2-butanone, 4-methyl-2-pentanone, isopropanol, ethylbenzene, tetrahydrofuran, trichloroethene (TCE), toluene, vinyl chloride, and xylenes. These wastes, which are present at the Vine Hill Complex, contained "hazardous substances," which are defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14). There has been a "release" or threatened release of hazardous substances, including, but not limited to, those included in this paragraph, from the Vine Hill Complex into the "environment," within the meaning of sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and 9601(22).

46. DTSC, in its capacity as an agency of the State of California, is considered a "State" for purposes of recovery of response costs under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

47. Plaintiffs have incurred response costs not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, resulting from the releases or threatened releases of hazardous substances at and from the Vine Hill Complex, within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25). These response costs include, but are not limited to, costs to

monitor, assess, evaluate and/or respond to the release and/or threatened release of hazardous substances at the Vine Hill Complex, as defined in Sections 101(23), (24) and (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24) and (25). Plaintiffs are continuing to incur such costs, and Plaintiffs will continue to incur such costs in the future.

48. Each Defendant is jointly and severally liable, without regard to fault, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for Plaintiffs' response costs resulting from the release or threat of release of hazardous substances from the Vine Hill Complex.

49. Pursuant to section 107(a) of CERCLA, Defendants are also liable for interest accrued on Plaintiffs' response costs.

## SECOND CLAIM FOR RELIEF

**(Claim for Declaratory Relief Pursuant to section 113(g)(2) of CERCLA)**

50. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs 1 through 49 above, as though fully set forth herein.

51. Under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that each Defendant is jointly and severally liable to Plaintiffs for any response costs Plaintiffs have incurred, and for any further response costs Plaintiffs incur in the future, resulting from the releases and/or threatened releases from the Vine Hill Complex.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

1. For a judgment that each defendant is jointly and severally liable to Plaintiffs, without regard to fault, for all costs of response, removal, and remedial actions, including, but not limited to, oversight costs, incurred by Plaintiffs and resulting from release(s) and/or threatened release(s) of hazardous substances at, beneath, above, and/or from the Vine Hill Complex;

2. For a declaration that each defendant is jointly and severally liable to Plaintiffs, without regard to fault, for all future costs, including oversight costs, incurred by Plaintiffs as a

result of any release(s) and/or threatened release(s) of hazardous substances at, beneath, above, and/or from the Vine Hill Complex;

   3. For Plaintiffs' costs of suit;

   4. For Plaintiffs' attorneys' fees;

   5. For prejudgment interest; and

   6. For such other and further relief as the court deems just and proper.

Dated: September 24, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
TIMOTHY E. SULLIVAN
Supervising Deputy Attorney General

/s/ Somerset Perry
SOMERSET PERRY
DONALD A. ROBINSON
Deputy Attorneys General

*Attorneys for Plaintiffs Department of Toxic Substances Control and the Toxic Substances Control Account*